UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TROIX NELSON,

                            Plaintiff,

                -v-

KATHLEEN S. THOMSON, *et al.*,

                           Defendants.

23-CV-10379 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Troix Nelson, proceeding *pro se*, brings this action against the City of New York ("the City") and several of its employees ("City Employee Defendants"); the law firm Joey Jackson Law, PLLC, and its lawyers Joey Jackson and Peter Troxler ("Jackson Defendants"); the law firm Karasyk & Moschella, LLP, and its lawyer Mercedes Maldonado ("Karasyk Defendants"); and the union Correction Officers' Benevolent Association, Inc., and its president Benny Boscio ("Union Defendants"). Nelson alleges that his termination from the New York City Department of Correction ("DOC") violated the Fourteenth Amendment as well as various local laws including New York Civil Service Law Section 75, the Rules of the City of New York 5.2.7, and the New York City Charter Sections 621, 815(f), and 116.

      Before the Court are four motions to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by the City and City Employee Defendants, Jackson Defendants, Karasyk Defendants, and Union Defendants. Also before the Court is Jackson Defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11. For the reasons that follow, the motions to dismiss are granted and the motion for sanctions is denied.

1

I.     **Background**

    A.     **Factual Background**

Unless otherwise noted, the facts are drawn from Nelson's Amended Complaint (ECF No. 42 ("AC")) and are presumed true for the purpose of resolving these motions. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

Nelson began working for the DOC on June 27, 2016. (AC ¶ 24.) After serving a standard two-year probationary term, he was promoted to the status of a permanent civil service employee in June 2018. (*Id.* ¶¶ 24, 38.)

On September 17, 2021, Nelson was put on a thirty-day suspension, without pay, "for supposedly being absent without leave (AWOL) on multiple dates, spanning several months." (*Id.* ¶¶ 41-42.) Nelson was given a document, dated September 16, 2021, listing the formal charges against him, which stated that Nelson had been AWOL for eleven calendar days between May and July 2021, and that his chronic absences were ongoing. (*Id.* ¶¶ 46-47.) Nelson alleges that these AWOL classifications were untimely and therefore "void." (*Id.* ¶¶ 48-58.) Further, he alleges that "he was not AWOL between July 24, 2021 and September 14, 2021" (*id.* ¶ 69), but rather two of the dates were "vacation days granted to Mr. Nelson by Personnel" (*id.* ¶ 106), and "[s]ome of the dates" were tardiness charges due to Nelson "tending to his grandmother" who "had no help and could not afford a Home Health Aide at the time" (*id.* ¶ 109).

Nelson was contacted by Defendant Peter Troxler, who introduced himself to Nelson as "the COBA lawyer who would be representing [Nelson] in the 30-day suspension without pay disciplinary case." (*Id.* ¶¶ 80-81.) Nelson alleges that he did not give affirmative verbal consent for Troxler to represent him (*id.* ¶¶ 82-83), though Nelson continued to work with Troxler throughout his disciplinary proceedings (*id.* ¶¶ 84-86, 114-15, 128-29, 133-37).

After his thirty-day suspension, Nelson was reinstated on October 17, 2021. (*Id.* ¶ 71.)

2

Within two weeks of his return to work, Nelson was "assaulted by an unruly inmate" when Nelson was physically restraining the individual to prevent him from assaulting another inmate. (*Id.* ¶¶ 72-74.) In addition to causing injury to Nelson's shoulder, this event "re-injured" his knee, which had previously been harmed on the job in 2017 while he was "moving [a] non-compliant inmate from the clinic to a DOC transportation vehicle." (*Id.* ¶¶ 34, 74.) Nelson's doctor "determined that surgery was needed to repair the new damage to his left knee," and Nelson scheduled the surgery for December 8, 2021. (*Id.* ¶ 75.) After Nelson's surgery, he "call[ed] out sick" until "about mid April 2022." (*Id.* ¶ 98.)

During Nelson's recovery period, in late December 2021, Nelson and Troxler met with DOC officials for a pretrial conference regarding Nelson's disciplinary charges. (*Id.* ¶¶ 85, 95.) At that conference, Troxler "had Mr. Nelson's Section 75 disciplinary proceeding adjourned to May 2022." (*Id.*)

On April 14, 2022, after Nelson had returned to work following his recovery period, the DOC served Nelson with amended formal charges. (*Id.* ¶ 99.) These included the allegation that Nelson had taken "an excessive use of sick leave" due to the "'approximately eighty-nine (89) days'" Nelson had taken between November 2021 and April 12, 2022, without providing "adequate medical documentation for all absences as required." (*Id.* ¶¶ 101-02.)

In May 2022, Troxler told Nelson that he need not appear in person for his administrative disciplinary proceeding because Troxler "had made an arrangement with the judge" such that Nelson would be on "a two year limited probation (through a Negotiated Plea Agreement ('NPA')) due to the personal emergencies that were turned into AWOLs by DOC." (*Id.* ¶¶ 17, 95, 115.) Troxler allegedly instructed Nelson to sign the NPA, warning him that otherwise, "he would get terminated right then and there, and that even if Mr. Nelson were to go to trial he

3

would lose his case." (*Id.* ¶ 141.) Nelson, thinking he had no other option, signed the NPA "under great duress and complete confusion." (*Id.* ¶ 148.)

Nelson returned to work in June 2022. (*Id.* ¶ 150.) However, on November 22, 2022, Nelson was suspended without pay for ten days (*id.* ¶¶ 152-53), after he was allegedly recorded on video surveillance "off post during an inmate fight" (*id.* ¶ 158). After the DOC served Nelson with formal charges, Troxler "presented[] Nelson with a second . . . NPA to sign, via email." (*Id.* ¶¶ 166-67, 171-72.) Nelson alleges that Troxler did not present him with alternatives to the NPA, including a possibility of negotiating the disciplinary charges (*id.* ¶ 175), and that he again signed the NPA "under duress, confusion, and fear" (*id.* ¶ 181).

This constant scrutiny by the DOC caused Nelson to suffer stress-induced migraine headaches, weight fluctuation, irregular appetite, and irritable bowel syndrome. (*Id.* ¶¶ 163-65, 169-70.)

In April 2023, Nelson's ailing grandmother was hospitalized and then transitioned to at-home hospice care. (*Id.* ¶¶ 182, 186.) Nelson had to take days off of work and show up for work late to care for his grandmother when no other help was available. (*Id.* ¶¶ 188-95.) Nelson applied for FMLA leave, "specifically stat[ing] that his grandmother raised him from birth" (*id.* ¶¶ 199-200); however, the DOC denied Nelson's request (*id.* ¶ 201).

On July 31, 2022, Nelson was called into the Warden's office after an overtime shift. (*Id.* ¶¶ 213, 215.) During a meeting with the Commanding Officer and Assistant Commissioner, Nelson was given a termination letter and asked to surrender his shield and identification card. (*Id.* ¶¶ 217, 219.)

After his termination, Nelson spoke with Defendant Benny Boscio, the president of the Correction Officers' Benevolent Association, Inc. ("COBA"), Defendant Joey Jackson, a union

4

attorney from Joey Jackson Law, PLLC, and Defendant Mercedes Maldonado, a union attorney from the law firm Karasyk & Moschella, LLP. (*Id.* ¶¶ 18-22, 229, 230, 232.) Maldonado filed requests for documentation regarding Nelson's termination from the DOC. (*Id.* ¶¶ 233, 235.)

During this time, Nelson began to seek advice from Wayne Tatum, "a former correction officer and COBA delegate" and now a "Labor Relations and Civil Service Consultant." (*Id.* ¶¶ 236, 239-40.) Tatum advised Nelson that he could only be fired by the "commissioner of correction," so his termination was invalid (*id.* ¶¶ 247-251), but on a phone call with Maldonado, she told Nelson that Tatum's statement was not true, and that anyone could terminate him because he was on probation (*id.* ¶ 262).

Following their conversation on November 15, 2023, and after Maldonado had reviewed the documentation from the DOC, she sent Nelson a follow-up email stating:

> After that long discussion with your mother, it is abundantly clear that you wish to challenge your termination. For the reasons we discussed on the phone, I think an Article 78 proceeding is not likely to result in your reinstatement. That said, I am willing to try, if you send me the information requested below. [Maldonado then enumerated the documentation she would need of Nelson's alleged sick leave and personal leave requests.] **The deadline to file an Article 78 proceeding expires on 11/25/2023**. . . . My office will then reach out to you about the filing fee.

(*id.* at 109 (emphasis in original).) Nelson found the email "confusing," and did not understand why Maldonado would be charging him a filing fee since she was a COBA attorney. (*Id.* ¶ 270.) Nelson does not allege, however, that he sent Maldonado the requisite documentation to pursue an Article 78 administrative review proceeding to challenge his termination. Nor does Nelson allege that he pursued an Article 78 hearing on his own.

### B. Procedural History

Nelson commenced this case on November 24, 2023 (ECF No. 1) and filed his amended complaint on June 3, 2024 (AC).

5

Karasyk Defendants moved to dismiss the amended complaint on June 17, 2024. (ECF No. 46.) Jackson Defendants renewed their motion to dismiss, previously filed before Nelson amended his complaint, on July 16, 2024. (ECF No. 61.) The City and City Employee Defendants filed an updated motion to dismiss on August 1, 2024. (ECF No. 62.) And Union Defendants moved to dismiss the amended complaint on the same day. (ECF No. 64.) Nelson opposed these motions on August 15, 2024. (ECF No. 72.) Union Defendants replied in support of their motion on August 22, 2024. (ECF No. 76.) Karasyk Defendants replied on August 27, 2024. (ECF No. 79.) And the City and City Employee Defendants replied on September 12, 2024. (ECF No. 82.)

Meanwhile, on August 16, 2024, Jackson Defendants moved for Rule 11 sanctions against Nelson. (ECF No. 67.) Nelson opposed their motion on September 30, 2024. (ECF No. 83.)

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Such a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court must accept as true all factual allegations in the amended complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Nelson is litigating his case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). As such, "a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). However, all of this being true, "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### III. Discussion

Jackson Defendants, Karasyk Defendants, and Union Defendants move to dismiss Nelson's federal claims, arguing that they are private actors and thus not subject to the Fourteenth Amendment's guarantee of due process. (ECF No. 29 ("Jackson Mem.") at 10; ECF No. 48 ("Karasyk Mem.") at 13; ECF No. 65 ("Union Mem.") at 13.) They also argue that Nelson was not deprived of any cognizable liberty or property rights. (Jackson Mem. at 16; Karasyk Mem. at 16-17; Union Mem. at 18-19.) The City and City Employee Defendants contend that Nelson was given adequate process and so his Fourteenth Amendment rights were not violated, and that any constitutional violations were not undertaken pursuant to an official policy or custom. (ECF No. 63 ("City Mem.") at 8, 16.)

Union Defendants urge the Court to decline to exercise supplemental jurisdiction over the local law claims, should the Court dismiss Nelson's federal claims. (Union Mem. at 18.)

#### A.    Fourteenth Amendment Due Process

"A public [tenured] employee has a property interest in continued employment" protected by the Fourteenth Amendment's due process clause which guarantees certain procedural safeguards. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Because the Fourteenth Amendment is directed to state governments, "[a]llegations of procedural due process violations by certain individual government employees, as opposed to direct challenges to state procedures or the lack thereof, have long been accepted as constituting state action and forming the basis for a claim under the civil rights statutes." *Id.* at 891. "In order to succeed on a claim

of deprivation of procedural due process, a plaintiff must establish that state action deprived her of a protected property or liberty interest." *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (per curiam) (brackets and quotation marks omitted).

The Court first addresses whether Defendants exercised state action and then turns to whether Nelson has adequately alleged deprivation of a property interest without sufficient procedural safeguards.

1. **State Action**

Other than the City of New York and the City Employee Defendants, all other Defendants allege that they are purely private actors and thus not subject to the constraints of the Fourteenth Amendment. (Jackson Mem. 10; Karasyk Mem. at 13; Union Mem. at 12.)

While "[l]abor unions," including their attorneys, "generally are not state actors," *see Ciambriello*, 292 F.3d at 323, Nelson alleges that Jackson Defendants, Karasyk Defendants, and Union Defendants "[w]orked with" the City and its employees "to constructively remove Mr. Nelson from service wrongfully." (AC ¶ 444.)

Construing Nelson's claims "liberally," as the Court must for a *pro se* plaintiff, *Meadows*, 963 F.3d at 243, such an assertion appears to implicate "joint activity" between private and state actors, which can qualify as state action, *Ciambriello*, 292 F.3d at 324. However, in situations where unions and their representatives are "in adversarial positions" with local governments, the Second Circuit has been skeptical of blanket assertions that the two parties worked in concert to deprive an employee of his job. *See id.* at 324. Further, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

Nelson's claims also appear to implicate a potential alleged Section 1983 conspiracy between Union Defendants, Jackson Defendants, Karasyk Defendants, and the City. To

8

adequately plead such a claim, Nelson "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324-25.  Further, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* at 325 (quotation marks omitted).

For the most part, Nelson makes only broad, conclusory allegations that some kind of collusion occurred between the private-actor defendants and the City.  (*See* AC ¶ 444 ("By their actions and inactions in Mr. Nelson's case, Defendants Boscio, COBA, Troxler, Jackson, Jackson law firm, Maldonado, and K & M law firm worked with Defendant Thomson, Molina, and the City to constructively remove Mr. Nelson from service wrongfully.").)  Such generalized, sweeping accusations do not survive the 12(b)(6) pleading requirement to allege joint activity or conspiracy.

Though he spends more of his amended complaint discussing the misdeeds of Troxler than any other private-actor defendant, Nelson still falls short of adequately alleging that Troxler engaged in joint activity or conspiracy with the City.  Nelson alleges that Troxler failed to meaningfully include him in the NPA process with the DOC, did not sufficiently advocate for his needs in the plea agreement process, and ultimately pressured Nelson to take the plea deals when Nelson believes there were not valid charges against him.  (*See* AC ¶¶ 115-17, 124, 126, 148, 180-81.)  But while Nelson alleges that he was unhappy with Troxler's representation, Nelson fails to allege any specific facts connecting Troxler's allegedly bad lawyering with the City's decisions to put Nelson on probation and to ultimately terminate him.

9

Because Nelson has not adequately pleaded that Jackson Defendants, Karasyk Defendants, or Union Defendants were acting under the color of state law through joint action or conspiracy, those Defendants' motions to dismiss Nelson's Fourteenth Amendment claims are granted.

### 2. Procedural Protections

City Employee Defendants move to dismiss Nelson's due process claim arguing that Nelson was a probationary employee and thus not guaranteed a property interest in his continued employment and, alternatively, that due process was afforded to Nelson.[1] (City Mem. at 12, 15.) Because Nelson has alleged that his probationary status was itself a product of the DOC's unconstitutional deprivation of his civil service status, the Court first addresses the alternative argument that the procedure offered to Nelson was sufficient.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Regardless of whether the DOC's process was based on established procedures or whether several of the named employees committed "random, unauthorized acts" by fabricating AWOL absences against Nelson, Nelson's due process claim fails.

---

[1] City Employee Defendants have also alleged that Nelson has failed to effectuate proper service on Defendants Kat Thomson, Sherrie Rembert, Charisma Carter, and Asim Rehman, because state law does not authorize the City to accept service on behalf of named individual defendants. (ECF No. 63 at 7 n.1.) However, because the Court determines that Nelson's due process claims against these individuals are properly dismissed for failure to state a claim, it need not reach the question of proper service and declines to do so.

First, if the DOC's termination process was a standard one based on codified procedures, Nelson must have had "a pretermination hearing that satisfied the 'essential requirements of due process.'" *Flynn v. Bloomingdale*, No. 22-1431, 2023 WL 4832223, at *3 (2d Cir. July 28, 2023) (summary order) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  That includes "notice and an opportunity to respond." *Id.*  Nelson was afforded three different forums in which to present his case before he was terminated.  First, Nelson and Troxler met with DOC officials in a "pre-trial conference" in December 2021.  (AC ¶¶ 91, 95.)  Second, Nelson agreed to accept an NPA in May 2022 rather than litigate his case in a disciplinary trial.  (*Id.* ¶ 148.)  Third, Nelson agreed to accept a second NPA in March 2023 rather than go to a disciplinary trial after subsequent disciplinary charges were filed against him.  (*Id.* ¶¶ 172, 181.)  "The fact that Plaintiff chose . . . to settle before she could take advantage of these procedures does not mean she was deprived of process." *Flynn*, 2023 WL 4832223, at *4.  Even if Nelson was coerced by his attorney to sign the NPAs, as he alleges (AC ¶¶ 141, 148, 166-67, 171-72, 181), such pressure by a private attorney to forego formal hearings does not change the fact that the City offered Nelson these hearings in the first place.  Having failed to adequately allege that a conspiracy existed between Troxler and the DOC, *see Supra* Section III.A.1, Nelson fails to connect Troxler's legal advice that Nelson sign the NPAs to any state actors.

Second, even assuming that DOC employees acted in a "random and unauthorized" manner by fabricating charges against Nelson, "the existence of a meaningful post-deprivation remedy . . . would automatically satisfy procedural due process." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006).  The Second Circuit has determined that "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001).  Nelson was offered an

11

Article 78 post-deprivation hearing, which he discussed at length with Maldonado, his union-appointed attorney after his termination. (*See* AC ¶ 109.) Maldonado told Nelson that he was "not likely" to be reinstated, but that she was "willing to try" to argue his case in the Article 78 proceeding. (*Id.*) The fact that Nelson decided not to go through with the Article 78 proceeding was Nelson's own decision, and he knowingly waived the procedural protection offered to him.

Thus, regardless of how City Employee Defendants acted in pursuing Nelson's termination, and regardless of whether his probationary status was legitimate, Nelson was afforded adequate procedural protections to challenge the employment actions taken against him.

The City Employee Defendants' motion to dismiss Nelson's Fourteenth Amendment claims is therefore granted.

### 3.     *Monell* Claim

In addition to alleging due process violations by individual City employees, Nelson alleges a *Monell* claim against the City as a municipality. Nelson is correct that a local government is subject to suit under Section 1983 under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). An individual may recover damages against a municipality when municipal officials violate his constitutional rights, so long as the unconstitutional actions were caused by an official policy or custom. *Id.* at 690-91. However, when "no constitutional injury" has occurred, a *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because the Court has dismissed Nelson's Fourteenth Amendment claims against all defendants, Nelson's *Monell* claim has no underlying constitutional injury. The Court therefore dismisses his claim for municipal liability.

### B. Local Law Claims

After dismissal of the due process and related *Monell* claims, no federal claims remain. A federal district court may decline to exercise supplemental jurisdiction over non-federal claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In making this determination, courts consider the "familiar factors of judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Karmel v. Liz Claiborne, Inc.*, No. 99-CV-3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2022) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), . . . it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

The Court thus declines to exercise supplemental jurisdiction and dismisses Nelson's local law claims without prejudice to refiling. *See Cohill*, 484 U.S. at 350.

### C. Motion for Sanctions

In addition to filing a motion to dismiss, Jackson Defendants have filed a motion for sanctions against Nelson. (ECF No. 67.) Defendants argue that sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure because Nelson's arguments are frivolous. (ECF No. 68 at 14.) Further, Defendants assert, sanctioning Nelson would deter Wayne Tatum, who Nelson admits helped him understand his rights, from advising other DOC employees on future *pro se* legal claims. (*See id.* at 24-26.)

Pursuant to Rule 11(b), a party presenting a pleading to the court certifies that "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; "(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "(3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). "Although courts may afford them greater leniency, *pro se* litigants are not immune from Rule 11 sanctions." *Ferguson v. Comm'r of Tax & Fin.*, 739 F. App'x 19, 22 (2d Cir. 2018) (summary order) (citing *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989)).

While Nelson has not succeeded at the motion to dismiss stage, even given the special solicitude afforded to *pro se* litigants, his filings are not so devoid of fact and reason as to merit Rule 11 sanctions. Nor do moving Defendants produce evidence that Nelson pursued these claims for any improper purpose, such as to harass or delay. Though Defendants spend significant time describing Wayne Tatum's role in advising Nelson, they cite no case law holding that the Court should sanction a *pro se* plaintiff for seeking advice from a non-lawyer third-party, or that the Court may somehow sanction Nelson to punish Tatum for Tatum's "conduct [that] has gone undeterred for nearly two decades." (ECF No. 68 at 19.) Jackson Defendants do not allege that Nelson has filed other cases himself, and it would be unjust to sanction Nelson for the alleged frivolity of other litigants, even if they were advised by one Wayne Tatum.

Jackson Defendants' motion for sanctions is therefore denied.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED and Jackson Defendants' motion for sanctions is DENIED.

The Clerk of Court is directed to terminate the motions at Docket Numbers 32, 46, 53, 61, 62, 64, and 67, to enter judgment of dismissal, and to close the case.

SO ORDERED.

Dated: February 11, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge